# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRUSTEES OF THE TEAMSTERS LOCAL 631 SECURITY FUND FOR SOUTHERN NEVADA,<br><br>  Plaintiffs,<br><br>vs.<br><br>STRUCTURE EXHIBIT & EVENT MANAGEMENT, a Nevada corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>  Defendant(s). | Case No.: 2:09-cv-00625-RLH-PAL<br><br>**O R D E R**<br><br>(Plaintiff's Motion for Summary Judgment–#20, Defendants' Motion for Summary Judgment–#31, Defendants' Counter Motion to Amend Complaint–#39) |

Before the Court is Plaintiff Trustees of the Teamsters Local 631 Security Fund for Southern Nevada's (the "Security Fund") **Motion for Summary Judgment** (#20), filed January 20, 2010. The Court has also considered Defendants Structure Exhibit & Event Management ("Structure") and Fidelity and Deposit Company of Maryland's Opposition (#33), filed February 8, 2010, and the Security Fund's Reply (#40), filed February 24, 2010.

Also before the Court is Defendants' **Motion for Summary Judgment, or in the Alternative, Enforcement of a Settlement Agreement Which Precludes Further Audits** (#31), filed January 28, 2010. The Court has also considered the Security Fund's Opposition (#37) and

1

1 **Counter Motion to Amend the Complaint** (#39), filed February 18, 2010, Defendants' Reply
2 (#47), filed March 9, 2010, and the Security Fund's Errata (#50), filed April 13, 2010.

## BACKGROUND

This dispute arises from the Security Fund's claims that Structure failed to remit health and welfare contributions for eight managerial employees. The following facts are undisputed unless otherwise noted. On January 24, 2003, Structure signed a Short Form Collective Bargaining Agreement ("CBA") with the International Brotherhood of Teamsters, Local 631 (the "Teamsters"). The CBA included a requirement that Structure comply with the terms of the Master Labor Agreement ("MLA") between the Teamsters and G.E.S. Exposition Services. (Dkt. #27-3 Ex. 2B Tab 2, MLA effective June 2001 to May 2004.) The Teamsters classified Structure employees who exclusively performed work covered by the CBA and MLA as "bargaining unit employees." Structure employees who performed at least some work that was not covered by the CBA and MLA—typically, employees who perform managerial or administrative functions in addition to their trade—were classified as "non-bargaining unit employees."

### A. Terms of the 2001–04 MLA and 2004–07 MLA

The MLA included a provision requiring Structure to remit monthly contributions to the Security Fund for "health and welfare and dental/vision coverage" of Structure's bargaining unit employees. (*See id.*, Art. 14 Section A, "Health and Welfare.") Structure also signed a Non-Bargaining Unit Participation Agreement ("Participation Agreement") that allowed its non-bargaining unit employees who were considered "full-time" and "working at least 30 hours per week" to receive the Teamsters' health and welfare coverage. (Dkt. #33, Defs.' Opp'n Ex. B 1–2.) Under the Participation Agreement, "Non-bargaining unit employee contributions [were to be made at] a flat rate established by the Trustees and updated time-to-time." (*Id.*)

The 2001–04 MLA provided that contributions be paid to the Security Fund at a flat rate for all "seniority employees" and at an hourly rate for all "casual workers." (Dkt. #27-3 Ex. 2B Tab 2, Art. 14.) Structure made contributions for the non-bargaining unit employees at the flat

2

rate and at the hourly rate for all bargaining unit employees. However, in June 2004, the Teamsters revised the MLA to eliminate flat rate contributions for seniority employees and further stated that an employer's sole obligation was to contribute an hourly rate for all MLA-covered employees. (Dkt. #28 Ex. 2B Tab 3, Art. 14 Sec. C–D, "Health and Welfare," effective June 2004 to May 2007.) The revised MLA stated, "There shall be no minimum contributions for employees working at least 86 hours, but less than 173 hours." (*Id*. Sec. D.)

### B. The Trust Agreement

In addition to signing the CBA and MLA, Structure also signed a trust agreement, which imposed additional regulations on its relationship with the Security Fund. (Dkt. #29-1 Ex. 2B Tab 6, Agreement and Decl. of Trust for Teamsters Local 631 Security Fund for S. Nev. ("Trust Agreement"); *see also* Dkt. #47, Defs.' Reply Ex. M, Trust Acceptance and Contract Data.) The Trust Agreement gave the Security Fund authority to require employers to "submit to [the Security Fund] any information, data, or documents reasonably relevant to and suitable for [administrative] purposes...." (Dkt. #29-1, Art. III Sec. 6.) The Security Fund retained the right "to audit the books and records of any Employer as may be necessary to determine … that the correct contributions have been received," and the parties agreed to "use their best efforts to secure compliance" with any reasonable audit request. (*Id*.) In the event of delinquent contributions, the Trust Agreement provided for the award of interest, attorney fees, liquidated damages, and court costs. (*Id*. Sec. 6–7, Amend. 2.)

### C. The First Lawsuit and Settlement Agreement

On February 14, 2008, the Security Fund filed its first lawsuit in this Court against Structure. (Dkt. #33, Defs.' Opp'n Ex. A, Case No. 2:08-cv-00198-RLH-RJJ.) The first lawsuit sought allegedly delinquent contributions on behalf of two groups of Structure employees: bargaining unit employees under the MLA and non-bargaining unit employees under the Participation Agreement. (*Id*. Compl. ¶¶ 4–5, 13–14.) In February 2009, the parties executed a Settlement Agreement and Release (*Id*. Ex. C) in which the parties stipulated to dismiss the

lawsuit without prejudice. (*Id*. Ex. D, Stipulation and Order for Dismissal, Mar. 17, 2009.)

During the first lawsuit's discovery period, the Security Fund conducted two audits: "Audit 1" for bargaining unit employees and "Audit 2" for eight non-bargaining unit employees: John Boyko, Fred Danser, Raymond Glomski, Jacob Lucas, Benjamin Renteria, Dave Shumway, Samir Thaker, and Jesse Burton (collectively referred to as "Management Employees"). Both audits covered the period of January 1, 2003 through March 31, 2007. For Structure's bargaining unit employees, the parties agreed on the results of Audit 1, which made the Settlement Agreement and dismissal final as to those employees. However, with respect to the Management Employees, the parties disputed the results of Audit 2, which concluded that Structure owed $60,196.78 in delinquent contributions for the Management Employees. (Dkt. #37, Pl.'s Opp'n Ex. 2 Tab B, Audit 2 Summary.)

In the Settlement Agreement, the parties stated, "neither the base amount of Audit 2 nor claims for liquidated damages, interest or other costs based on Audit 2 have been resolved." (Dkt. #33, Defs.' Opp'n Ex. C, Settlement Agreement 2, ¶ 2.) The parties agreed to re-audit Structure's Management Employees within 30 days of the execution of the Settlement Agreement. (*Id*. ¶ 6.) The parties also agreed that Defendants would waive all time-related defenses for future claims based upon the re-audit as long as the Security Fund filed its second lawsuit within 60 days of the re-audit's completion. (*Id*. ¶ 5.) Structure complied with the re-audit; however, the re-audit did not resolve the dispute because it concluded Structure actually overpaid a total of $18,132.95. (*Id*. Ex. F, Re-audit Summary.)

### D. The Current Lawsuit

On April 6, 2009, the Security Fund filed this case—its second lawsuit against Structure. The Security Fund claims Structure owes $292,609.05 in delinquent contributions, calculated based on 40 hours per week for each Management Employee (minus the number of hours Structure previously reported and paid). The Security Fund also seeks recovery of liquidated damages, attorney's fees, audit expenses, and interest on the alleged unpaid contributions for a

1  total of $627, 215.31.

2  On December 4, 2009, the Security Fund served Structure with its written discovery
3  requests for which a response was due on January 3, 2010. (Dkt. #20, Pl.'s Mot. 3 n.1.) Due to
4  the holiday season, Structure's counsel requested a 30-day extension and the Security Fund's
5  counsel agreed to extend the due date until February 3. Structure's counsel memorialized this
6  courtesy in a letter to opposing counsel. (Dkt. #33, Defs.' Opp'n Ex. H, Kelly Kichline letter to
7  Xanna Hardman, Dec. 16, 2009.) In return for the courtesy extension, the Security Fund asked
8  Structure to agree to extend the discovery cut-off from March 8 to June 1. The parties
9  subsequently filed a stipulation reflecting the new deadlines and amending the scheduling order.
10 (Dkt. #17, Stipulation, Dec. 21, 2009.)

11 On January 5, Magistrate Judge Peggy A. Leen denied the stipulation without
12 prejudice. (Dkt. #19, Mins. of Disc. Hr'g.) By this time, the original response deadline of January
13 3 had passed; however, the parties did not bring this to the Court's attention. In the hearing,
14 Structure's counsel informed the Court that it intended to either respond to the discovery requests
15 or file a motion for protective order. (Dkt. #32, Tr. of Disc. Hr'g 4–5.) The Court did not
16 specifically address the stipulated deadline for written discovery responses, but it gave Structure
17 until February 8 to file a dispositive motion or motion for protective order. (*Id.* 6–7.) The
18 Security Fund proceeded to file its summary judgment motion on January 20—two weeks before
19 the extended due date (February 3) and before the court's motion deadline (February 8).

20 Now before the Court is the Security Fund's Motion for Summary Judgment (#20),
21 Counter-Motion to Amend the Complaint (#39), and Structure's Motion for Summary Judgment
22 (#31), which alternatively asks the Court to enforce the parties' settlement agreement and preclude
23 further audits. For the reasons discussed below, the Court denies both motions for summary
24 judgment and denies the Security Fund's motion to amend.

25 /
26 /

AO 72
(Rev. 8/82)

## DISCUSSION

**I.     The Security Fund's Requests for Admission ("RFA") to Structure**

As a preliminary matter, the Court must address the Security Fund's assertion that Structure admitted to all liability in this case by failing to respond to its RFA. In its motion, the Security Fund informed the Court that more than 30 days had passed since Structure was served with the RFA. Therefore, the Security Fund concluded that Structure failed to timely respond. (Dkt. #20, Pl.'s Mot. 3 n.1.) As a result, the Security Fund deemed each RFA admitted pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure. Rule 36(a)(3) states that a request for admission is admitted unless the party to whom the request is directed responds with a written answer or objection within 30 days. However, it goes on to state that "[a] shorter or longer time for responding may be stipulated to under Rule 29...." Rule 29 allows litigants to stipulate to changes in discovery procedures and deadlines; however, "a stipulation extending the time for any form of discovery must have court approval *if it would interfere with the time set for completing discovery....*" Fed. R. Civ. Pro. 29(b) (emphasis added).

The Court is troubled by the Security Fund's suspect procedural maneuver. It relied on one part of Rule 36(a)(3) to deem each RFA admitted, but did not take into account the remaining language, Rule 29, or its own courtesy extension. The Security Fund used a cursory footnote to inform the Court that no response had been received and no extension had been granted.[1] (Dkt. #20, Mot. 3 n.1.) However, the Security Fund had itself given Structure an extension until February 3, which Rule 29 allowed the parties to do without court approval because the Security Fund did not extend the discovery cut-off set for March 8. In addition, Judge Leen allowed Structure until February 8 to file a dispositive motion or motion for protective order—despite denying the stipulation. Thus, the Security Fund was aware that Structure had until at least February 3 to respond to the RFA or February 8 to file a motion, and it represented to the

---

[1] Structure did respond to the RFA on January 22, albeit after the Security Fund filed its motion for summary judgment on January 20.

6

1  Court that it would to do so.  Because the Security Fund gave Structure an extension to respond
2  and knew Structure planned to do so, the Court will not deem Structure's RFA admitted.

## II.     Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

/

### A. The Security Fund's Motion

The Security Fund now moves for summary judgment on its claim against Structure for $627,215.31. However, the Court concludes that this motion fails because triable issues of fact remain regarding how much money Structure may owe the Security Fund.

#### 1. The Split-Time Rule

Through a series of cases, the Ninth Circuit has developed a "split-time rule" which requires an employer to make contributions for all hours an employee actually works or is paid when the employee splits his time between a position or tasks covered by the collective bargaining agreement and those that are not covered. *Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1351 (9th Cir.1990); *see also Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1341 (9th Cir.1988); *Kemmis v. McGolderick*, 706 F.2d 993 (9th Cir.1983). By adopting this rule, the Ninth Circuit reinforced a policy objective addressed in numerous collective bargaining agreements—deterring employers from manipulating employee hours:

> the primary reason for adopting [this policy] was to minimize the employers' ability to manipulate accounting records to make it appear that employees were not performing MLA work. It would place an "undue burden on most trust funds to require them to perform the investigatory accounting work necessary to ensure the accuracy of employer contributions where employers purpose to split their employees" time between bargaining unit and nonbargaining unit work.

*B & E Backhoe*, 911 F.2d at 1354 (quoting *A-C Co.*, 859 F.2d at 1342).

If an employee has performed both covered and non-covered work, the court conducts a two-step inquiry. *B & E Backhoe*, 911 F.2d at 1351. First, the court begins with the presumption that the employee worked forty hours per week. *Id*. If the employer successfully rebuts that presumption, it need only contribute for the actual hours the employee worked, and the inquiry ends. *Id*. at 1352. On the other hand, if the employer does not overcome the presumption, then the court proceeds to the second step of the inquiry. *Id*. In this step, the court conclusively presumes that the employee spent forty hours on covered work—even though the employee may have actually spent part of his or her time on non-covered work. *Id*. In other words, the Ninth

AO 72
(Rev. 8/82)

Circuit holds that collective bargaining agreements require employers to contribute to union trust funds on a full-time basis for split-time employees, irrespective of whether all hours were actually spent performing covered tasks. *Kemmis*, 706 F.2d at 997 ("[t]he overriding federal policy is best effectuated if collective bargaining agreements are interpreted and enforced in a uniform manner.").

The Court finds that the actual number of hours per week the Management Employees worked is in question. Pursuant to the split-time rule, the Security Fund is entitled to contributions for all hours Structure's Management Employees worked—regardless of whether the work was covered—unless Structure can rebut the presumption that they did not work full-time. The Security Fund's claim for $627,215.31 assumes that the Management Employees worked 40-hour weeks for the entire period at issue. (Dkt. #20, Pl.'s Mot. 4; Dkt. #27-1 Ex. 2, Aff. of Xanna Hardman ¶¶ 19, 25, Jan. 20, 2010.) Although the Court begins with the 40-hour week presumption, Structure has submitted sufficient evidence to raise a genuine issue of fact concerning the Management Employees full-time status. Structure maintains that its Management Employees worked roughly 100 hours per month, which would successfully rebut the presumption if proven. (Dkt. #33, Defs.' Opp'n Ex. K., Aff. of Samir Thaker, Feb. 8, 2010.)

The results of the re-audit also suggest the Management Employees worked less than 40 hours per week. A re-audit report was prepared using work tickets that the Management Employees completed for future bidding purposes, but the work tickets did not track each man-hour. As a result, the report concluded that Structure overpaid the Security Fund $18,132.95. (*Id.*, Defs.' Opp'n Ex. F.) However, the accuracy of this result is questionable because the work tickets under-represent the total number of hours the Management Employees worked. The Court finds that a fact-finder must resolve this question. Accordingly, the Security Fund is not entitled to judgment as a matter of law under a presumption that each Management Employee worked 40 hours per week.

/

9

### 2. The Management Employees' Length of Employment

The Court finds that other triable issues of fact remain relating to the Security Fund's claims. For instance, a genuine dispute remains concerning the number of management individuals Structure employed during the period in question. In its motion, the Security Fund asserts that eight management individuals worked continuously from April 2003 through March 2007. (Dkt. #20, Pl.'s Mot. 3; *see also* Dkt. #27-1 Ex. 2, Hardman Aff. ¶ 25.) However, Structure maintains that only three managers worked for that full period and the others worked for shorter periods. (Dkt. #47, Defs.' Reply 8.) The Security Fund's own calculations support Structure's assertion because the Summary of Hours reported details a fluctuation in hours the Management Employees allegedly worked. (Dkt. #30-1, Ex. 2 Tab D; *see also* Dkt. #27-1 Ex. 2, Hardman Aff. ¶ 27.) Because it appears Structure employed fewer Management Employees for shorter periods, the Security Fund's claim would be reduced by a commensurate amount. Thus, the Security Fund has not carried its burden of proof for summary judgment. Because both the amount and the nature of the Security Fund's claim is still the subject of genuine dispute, the Court denies the Security Fund's Motion for Summary Judgment.

### B.   Defendants' Motion

#### 1.   Summary Judgment

Defendants seek summary judgment in their favor on the Security Fund's claim, or in the alternative, a judgment enforcing the settlement agreement and precluding further audits. As the Court discussed above, genuine issues of material fact exist with regard to the Security Fund's claim. These triable issues of fact also preclude Structure's request for summary judgment. Accordingly, the Court denies Structure's Motion for Summary Judgment.

#### 2.   Enforcement of the Settlement Agreement

In the alternative, Structure seeks a declaration that the parties' Settlement Agreement precludes further audits. The Settlement Agreement provides for a re-audit of the disputed contributions for the Management Employees, to be performed within 30 days of

AO 72
(Rev. 8/82)

execution. Structure cooperated with auditors to complete this re-audit; nonetheless, the Security Fund now disputes the results of the re-audit and has filed suit to pursue its claim for delinquent contributions. The Settlement Agreement does not expressly contemplate such a situation. Instead, it gave the Security Fund 60 days to file a second lawsuit, which the Security Fund did.

Structure now asks the Court to preclude further audit because the Security Fund is attempting to accomplish another re-audit through its written discovery requests. The Court notes that Structure informed Judge Leen of its intent to file a protective order instead of responding to the Security Fund's requests for documents, but it did not file such motion. Instead, it filed the instant motion for summary judgment. Structure also maintains that additional audit would be futile because the company did not keep time cards for the Management Employees; thus, it is impossible to tell exactly how many hours were worked. This may or may not be true, but the Court cannot preclude additional re-audits based on the language of the Settlement Agreement because it does not expressly prohibit further audits.

Furthermore, the language in the Trust Agreement suggests that the Security Fund may have the right to perform further audit. Structure argues that the Court should preclude further audit because the Settlement Agreement used the word re-audit in a singular tense—a re-audit or the re-audit, instead of re-audits. The Court cannot conclude that this language indicates a preclusive intent. The Security Fund retained the right to "audit the books and records of any Employer as may be necessary to determine if all liabilities of such Employer to the Trustees have been paid, and to determine that the correct contributions have been received...." (Dkt. #29-1, Ex. 2B Tab 6, Trust Agreement Art. III Sec. 6.) The Trust Agreement also states, "the Employer shall make such books and records available at all reasonable times and places so that such *audits* may be conducted." (*Id*. (emphasis added).) The Court cannot conclude that either the Settlement Agreement or the Trust Agreement support Structure's assertion that the Security Fund should be precluded from preforming further audit. Accordingly, the Court denies Structure's alternative request.

### III. The Security Fund's Motion to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its complaint only by leave of the court after responsive pleadings have been filed and in the absence of the adverse party's written consent. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001). Additionally, Local Rule 15-1 requires a party seeking leave to amend must "attach the proposed amended pleading to any motion to amend so that it will be complete in itself without reference to the superseding pleading." LR 15-1(a).

The Security Fund seeks to amend their complaint to recover medical payments made on behalf of Structure's Management Employees. The Court concludes that Security Fund may be able to plead a set of facts that entitles it to relief under the terms of the CBA and Trust Agreement. However, because the Security Fund did not attach a proposed amended complaint, the Court cannot determine whether amendment would be proper. *See Gardner v. Martino,* 563 F.3d 981, 991 (9th Cir. 2009) (denying motion for leave when plaintiff failed to attach proposed amended complaint). The Court therefore denies the Security Fund's Motion to Amend the Complaint.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that the Security Fund's Motion for Summary Judgment (#20) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (#31) is DENIED.

/

/

/

/

/

1    IT IS FURTHER ORDERED that the Security Fund's Counter Motion to Amend the Complaint (#39) is DENIED.

Dated: July 23, 2010.

_____
ROGER L. HUNT
Chief United States District Judge

AO 72
(Rev. 8/82)